UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ANGEL L. CINTRON,

        Plaintiff,

  v.

ATTORNEY DAVID LANG,
ATTORNEY MICHAEL S. WINTER,
VERONICA GARCIA,
JEREMY CHARLES, and
DELOS SANTOS LAW OFFICES,

        Defendants.

Case No. 19-cv-1249-pp

---

**ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE (DKT. NO. 2), DENYING MOTION TO ADD PARTY (DKT. NO. 4) AND DISMISSING CASE FOR FAILURE TO STATE A CLAIM**

---

      On August 28, 2019, the plaintiff, representing himself, filed a complaint and a motion to proceed without prepaying the filing fee. Dkt. Nos. 1, 2. Since then, the plaintiff has filed several pleadings, including a letter asking to add a defendant (dkt. no. 4), a letter asking for an update (dkt. no. 5), a second letter asking to add the same defendant (dkt. no. 6), a document titled "timeline" (dkt. no. 7), a letter about his small claims case (dkt. no. 8), a letter about his health (dkt. no. 10) and a second copy of the letter about his small claims case (dkt. no. 11). The court regrets that its caseload has prevented it from reviewing the complaint in a timely fashion.

1

The complaint alleges that in February of 2014, a company called Springleaf Financial informed the plaintiff that he had started to apply for, and ultimately received, loans. Dkt. No. 1 at 2. Springleaf listed various dates on which the plaintiff allegedly received checks and alleged that the plaintiff had endorsed the checks and cashed them at a bank. Id. Springleaf claimed that the plaintiff had used a Wisconsin driver's license as proof of his identity at the bank. Id. The plaintiff says that he did not apply for the loans or cash the proceeds checks, and that he can prove it with hospital records and paperwork. Id. The plaintiff believes that defendants Veronica Garcia and Jeremy Charles of Springleaf used his information to illegally obtain the funds. Id. at 2-3.

The plaintiff indicates that he has tried to obtain relief for the fraudulent loans in various ways, including by hiring "various attorneys." Id. at 3. He says he hired and paid Attorney David Lange and Attorney Michael Winter; he says that not only did neither attorney provide satisfactory service, but that he has paperwork and documents to prove that neither of them acted in his best interest or communicated with him adequately, despite his pleas. Id. The plaintiff thinks that because of his age and because of language barriers, all the defendants took advantage of him. Id.

The plaintiff attached several documents to the complaint, including copies of two of the Springleaf checks (dkt. no. 1-1 at 5-6), three copies of what appears to be the signature page of his retainer agreement with David Lang (dkt. no. 1-1 at 3, 7 and 8), two copies of a document dated October 4, 2016, apparently signed by the plaintiff, giving Attorney Lang's firm permission to use

2

his signature to obtain records (dkt. no. 1-1 at 4, 10), a copy of a December 2018 letter from the plaintiff to a CNN news anchor (dkt. no. 1-1 at 20) and a copy of a May 8, 2018 letter to investigator Jonathan Zeisser at the Wisconsin Office of Lawyer Regulation, asking for a return of his documents and an explanation as to how Zeisser determined that Attorney Lang was not "guilty of any misconduct" (dkt. no. 1-1 at 1).

The letter to the CNN anchor was dated December 11, 2018. Dkt. No. 1-1 at 2. In it, the plaintiff asserted that he was eighty-five years old, had had two strokes and was hard of hearing. Id.

In the letter to Zeisser, the plaintiff asserted that he was going to contact CNN Español "about this whole situation, of One Main Financial stealing my money, and how when I hired an attorney to help me, he then stole my money and did nothing to help my case, and I need that paperwork back to do so." Dkt. No. 1-1 at 1. The party whom the plaintiff sought to add as a defendant in two motions is Jonathan Zeisser. Dkt. Nos. 4, 6.

The plaintiff attached to one of the motions to add Zeisser as a party a copy of an undated letter he wrote to the fee arbitration administrator at the State Bar of Wisconsin. Dkt. No. 6-1 at 3. In this letter, he indicates that he "only took out a loan for $500 with the Springleaf Corporation." Id. He indicated that after paying Springleaf "in full for all of the loans, [he] realized that there was extra money taken out in [his] name from them." Id. The letter told the fee arbitration administrator that after six months of Attorney Lang not helping him, the plaintiff decided to go to small claims court on his own, but

3

when he got there, Attorney Lang spoke on his behalf and would not let him speak. Id. The plaintiff indicated that interpreters were present but did not help him, and that eventually, Attorney Lang closed his case. Id.

The plaintiff also attached to this motion the second pages of two letters from Beth McNamara Wilson, Assistant General Counsel at what appears to be a company called OneMain. Dkt. No. 6-1 at 2, 4. One of the letters, dated August 19, 2016, appears to be to a LaToya Brown; the other, dated November 30, 2016, appears to be to a Meghan H. M. Koury. Id. The letters appear to be responding to requests about the Springleaf loans, explaining how OneMain verified the loans.

The "timeline" the plaintiff filed indicates that in 2012, he was living in Houston. Dkt. No. 7. The document consists of bullet points, but the court believes that the plaintiff indicated that he had a stroke, was in the hospital with very high bills and had to file bankruptcy that year. Id. He came to Milwaukee in 2013 and took out a $500 loan in January or February of that year for his grandson. Id. In March 2014, he went to Springleaf Financial, located at 2972 S. Chase Avenue in Milwaukee, and spoke to Veronica Garcia; the timeline says "approved by Jeremy Charles." Id. The plaintiff appears to have taken the loan to U.S. Bank to cash and used his driver's license as identification; about three months later, he shredded the license because he learned he could take the bus for free. Id. He says he made cash payments on the loan. The timeline says that Springleaf "has no record of any loan or payments made on any loan prior to September of 2013." Id. Finally, the

4

timeline says, "Took out a loan w/ Emma Mendez from Springleaf Financial for $1005.31 on Sept. 11, 2013," and that it was "[p]aid in full October 2013." Id.

The plaintiff has sued Attorney Lang, Attorney Michael S. Winter, Veronica Garcia, Jeremy Charles and Delos Santos Law Offices. Dkt. No. 1 at 1. He has asked to be allowed to add Jonathan Zeisser, the Wisconsin Office of Lawyer Regulation Intake Investigator who denied his grievance claim against Lang. Dkt. Nos. 4, 6. He wants the court to order him to be refunded all the money he paid Lang and Winters, a refund of any court fees he paid, reimbursement for any court costs from this case, and "adequate compensation, determined by the court," from the defendants "to cover the time, money, + stress caused to the plaintiff after having to fight this since Feb. 2014, including postage, transportation, hospital/health, or any of the costs caused by the fraudulent loans + the process of attempting to remedy them." Dkt. No. 1 at 4.

## I. Motion to Proceed Without Prepaying the Filing Fee (Dkt. No. 2)

To allow the plaintiff to proceed without prepaying the filing fee, the court first must decide whether the plaintiff can pay the fee; if not, it must determine whether the lawsuit is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. §§1915(a) and 1915(e)(2)(B)(i). The plaintiff's request to proceed without prepaying the fee says that he is unemployed, single and has no dependents. Dkt. No. 2 at 1. He says that he doesn't own a car or a home, that he has no cash, checking, or savings and that he has no other property of value. Id. at 3-4.

The plaintiff has no income; he receives $1,244.84 a month in Social Security payments. Id. at 2. He states that he pays $436 a month in rent, $1,083.50 a month in "other household expenses;" the sum of these amounts is $1,519.50. Id. On page 3 of the application, however, the plaintiff asserts that his monthly expenses total $1,244.84—the exact amount of his Social Security payments and not the sum of $436 and $1,083.50. Id. at 2-3.

The defendant was eighty-five or eight-six at the time he filed this complaint, appears to live on his Social Security stipend and has suffered two strokes. The court concludes that he is not able to prepay the $400 civil filing fee.

## II. Screening

The court next must decide whether the plaintiff has alleged facts that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). To state a claim under the federal notice pleading system, a plaintiff must provide a "short and plain statement of the claim" showing that he is entitled to relief. Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead every fact supporting his claims; he needs only to give the defendants fair notice of the claim and the grounds upon which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). At the same time, the allegations "must be enough to raise a right to relief above the speculative level." Id. Because the plaintiff is

6

representing himself, the court must liberally construe the allegations of his complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

The plaintiff alleges that he has "age and language barriers"—it appears that he is eighty-five or eight-six, although he does not identify his native language. Dkt. No. 1 at 3. (The court assumes that it is Spanish, because the plaintiff told Ziesser he was going to complain to CNN Español, and he attached a letter to Fernando del Rincòn, a television host and anchor on CNN en Espanõl.) As best the court can make out from the various documents the plaintiff has filed, the plaintiff had a stroke while living in Houston, Texas in 2012, one that left him with large medical bills and drove him to bankruptcy. In 2013, he moved to Milwaukee and, sometime in January or February of 2013, applied for a $500 loan for his grandson. In March 2013, he went to Springleaf Financial at 2972 S. Chase Avenue in Milwaukee to pick up the money and spoke to defendant Veronica Garcia; he implies that Garcia worked at or for Springleaf Financial. He also implies that the loan was approved by Jeremy Charles. It appears that the plaintiff must have been issued a check, which he took to U.S. Bank to cash. He showed his driver's license as identification to cash the check. He indicates, however, that three months later, he shredded the license after learning that he could ride the bus free of charge.

The plaintiff also says in the timeline that he took out another loan from Emma Mendez at Springleaf; this loan was for $1,005.31, was taken out in September of 2013 and, according to the plaintiff, was repaid in full by October 2013.

7

The plaintiff appears to assert that starting in early February 2014, however, he began to get notices from Springleaf telling him that he had taken out other loans—loans he insists he did not take out—and notifying him that he had to repay them. He says he hired two lawyers—Lang and Winter—neither of whom helped him, and that he eventually took the case to small claims court, but that Lang intervened and had the case dismissed.

The plaintiff has filed this lawsuit in *federal* court. There are limits to the kinds of cases that federal courts may consider. They can consider and decide cases that involve violations of *federal* laws or the *federal* Constitution. 28 U.S.C. §1331. Federal courts also can consider and decide lawsuits between citizens of different states, if the amount they are fighting over is more than $75,000. 28 U.S.C. §1332. Federal courts cannot consider and decide lawsuits that involve state law, unless the plaintiff and the defendant live in two different states, or unless the state-law claims relate to a federal claim.

On page 4 of the form complaint, there is a section titled "JURISDICTION." Dkt. No. 1 at 4. It has two boxes; plaintiffs are supposed to check one or the other. The first box is next to the words, "I am suing for a violation of federal law under 28 U.S.C. § 1331." Id. The second box is next to the words, "I am suing under state law. The state citizenship of the plaintiff(s) is (are) different from the state citizenship of every defendant, and the amount of money at stake in this case (not counting interest and costs) is $_____." Id. The plaintiff did not check either of these boxes on his complaint.

8

The plaintiff lives in Milwaukee. Id. at 5. He did not identify the states of residence of Lang, Winter, Garcia or Charles; the court assumes that they live in Wisconsin, given that they work in Milwaukee. In fact, a brief Internet search shows that Attorney David J. Lang is a Wisconsin lawyer, https://www.jlk-law.com/partner/david-j-lang/, as is Michael Winter, https://www.wisc-law.com. The plaintiff also listed De Los Santos Law Offices in the caption of the complaint, but does not say where it is located; the Internet indicates that this law firm is located in Milwaukee, https://www.santoslaw.org. Assuming that Garcia and Charles also are Wisconsin residents, the court does not have jurisdiction over the lawsuit under 28 U.S.C. §1331, because the plaintiff and all the defendants are residents of the same state. The court can exercise jurisdiction over the plaintiff's case only if he is suing for a violation of a federal statute or the federal Constitution.

The plaintiff appears to make two claims. First, he appears to claim that sometime between 2013 and 2014, Veronica Garcia and Jeremy Charles used his identifying information to take out loans in his name. Second, he claims that Lang and Winter did not provide him with satisfactory representation and did not help him.

The plaintiff's first claim sounds like a claim of identity theft. The court is not aware of any federal statute that imposes civil liability on someone who steals someone else's identity. A person can face federal *criminal* charges for identity theft. For example, taking out a loan from a federally-insured bank

9

using someone else's identifying information can subject a person to federal criminal charges for bank fraud. There is a statute, 18 U.S.C. §1028A(a)(1), which subjects a person to criminal liability if the person commits another crime and, during the commission of that crime, "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person." 18 U.S.C. § 1028(a)(1). The state of Wisconsin also makes it a crime to "obtain credit, money, goods, services, employment, or any other thing of value or benefit" by stealing someone's personal identifying information. Wis. Stat. §943.201. But "[c]riminal charges are the responsibility of law enforcement officials like police and prosecutors, and private citizens cannot bring criminal charges in federal court." Wolinsky v. Aetna Ins. Co., No. 18 cv 5997, 2018 WL 10550783, at *2 (N.D. Ill. Nov. 19, 2018) (citing Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973)). If the plaintiff believes that Garcia and Charles committed the crime of identity theft, he should report that to law enforcement authorities, and they can decide whether there is enough evidence to prosecute.

The plaintiff also asserts, in relation to his first claim, that the loans were "fraudulent." There are some federal causes of action that sound in fraud. Under 15 U.S.C. §78j(b) and Rule 10b-5 of the Securities and Exchange Commission, a person can sue a defendant who makes a false representation in connection with the purchase or sale of a publicly-traded security and causes an economic loss. The plaintiff has not alleged that Garcia and Charles committed securities fraud.

10

Under the Racketeer Influenced and Corrupt Organizations Act, or RICO, a plaintiff can bring a civil suit for any act that violates RICO section 1962. 18 U.S.C. §1964(c). "To establish a violation of §1962(c), the plaintiff must prove four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Centec, LLC v. Plutshack, No. 15-C-1401, 2016 WL 3645184, at *3 (E.D. Wis. June 30, 2016) (citing Bible v. United Student Aid Funds, Inc., 799 F.3d 633, 655 (7th Cir. 2015)). The plaintiff has not alleged a RICO claim. "Congress passed RICO in an effort to combat 'organized, long-term criminal activity,' rather than 'isolated or sporadic criminal activity,' and it is not intended to provide a federal remedy for garden-variety fraud claims that could be pursued under state law." Id. (quoting Jennings v. Auto Meter Prods., Inc., 495 F.3d 466, 472–73 (7th Cir. 2007)). A "pattern" of racketeering activity requires the plaintiff to allege that there is a threat of "continued criminal activity." Id. (quoting Bible v. United Student Aid Funds, Inc., 799 F.3d 633, 659 (7th Cir. 2015)). The plaintiff alleges only that he suspects that Veronica Garcia and Jeremy Charles took out loans in his name without his permission. Dkt. No. 1 at 2-3. Even if this were true, the plaintiff has not identified an enterprise or a pattern of racketeering activity over a long term.

*Wisconsin* allows a plaintiff to sue for fraud. To prove fraud under Wisconsin law, a plaintiff must show that the people he sues made representations to him that were untrue and that he relied on those representations to his detriment. See, *e.g.*, Lewis v. Paul Revere Life Ins. Co., 80 F. Supp. 2d 978, 995 (E.D. Wis. 2000) (citing Whipp v. Iverson, 43 Wis. 2d

11

166, 159 (Wis. 1969)). The plaintiff is not claiming that Garcia or Charles made false representations to him or that he relied on those representations. He is alleging that they used his identifying information to take out loans in his name. Again, this sounds like identity theft. If the plaintiff wants to accuse Garcia and Charles of identity theft, he should report his allegations to law enforcement.

The plaintiff's first claim does not state a cause of action over which a federal court can exercise jurisdiction.

The plaintiff's second claim sounds like an allegation of attorney malpractice against Lang and Winter. Malpractice claims, like fraud claims, are "personal tort" claims which arise under state law, not federal law. To prove legal malpractice in a Wisconsin court, a plaintiff must show "not only that an attorney breached the standard of care, but also that the plaintiff *would* have prevailed (not *could* have prevailed) on the merits in the underlying action but for the breach." Anderson v. Vavreck, 727 F. App'x 870, 873 (7th Cir. 2018) (citing Helmbrecht v. St. Paul Ins. Co., 122 Wis.2d 94 (1984)). If the plaintiff believes that Lang and Winter breached their duties of care to him, and that he would have won his state case if they had not, he may sue them for malpractice in *state* court. But there is no federal legal malpractice cause of action.

Not only has the plaintiff failed to state any claims for which a federal court may grant relief, but he has not explained what some of the defendants he sued did to him. He says that Winter did not provide him with satisfactory service, but he does not explain what Winter did, or did not do, to commit

12

malpractice. He names De Los Santos Law Offices in the caption of his complaint but never mentions them again. He asked to add OLR investigator Jonathan Ziesser as a defendant but does not explain what he believes Zeisser did to him.

The plaintiff has not stated claims for which a federal court can grant relief. He has not made any allegations against some of the defendants, and the allegations he has made against others sound either in criminal law (which means the federal or state government, not the plaintiff, must bring those charges) or in state civil law (which means the plaintiff must bring them in state court). It would be futile for the court to allow the plaintiff to add Ziesser as a defendant when the plaintiff has stated no federal claims against the other defendants and made no allegations of wrongdoing against Zeisser. The court must dismiss the plaintiff's complaint because it does not state claims for which this federal court may grant relief.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES** the motion to add Zeisser as a party. Dkt. No. 4

The court **ORDERS** that this case is **DISMISSED** for failure to state a claim upon which relief can be granted.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment.

<u>See</u> Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. <u>See</u> Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. <u>See</u> Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. <u>See</u> Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 27th day of July, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**